UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------x

SELIM ZHERKA and THE WESTCHESTER
GUARDIAN, INC.,

                     Plaintiffs,        08 Civ. (   )

-against-

                                   COMPLAINT

JANET DiFIORE, individually, and THE
COUNTY OF WESTCHESTER,

                                   Jury Trial Demanded

                     Defendant.

-----------------------------------------------------------x

**ORIGINAL**

**08 CIV. 3469**

Plaintiffs SELIM ZHERKA and THE WESTCHESTER GUARDIAN, INC., by their attorneys Lovett & Gould, LLP, for their complaint respectfully state:

### NATURE OF THE ACTION

1. This is an action for compensatory and punitive damages, as well as related declaratory and injunctive relief, proximately resulting from Defendants' violation of Plaintiffs' rights as guaranteed by the First Amendment to the United States Constitution, 42 U.S.C. §1983.

### JURISDICTION

2. The Court's jurisdiction is invoked pursuant to 28 U.S.C. §§1331, 1343.

1

## THE PARTIES

3. Plaintiff SELIM ZHERKA is a citizen of the United States, a domiciliary of the State of New York, a resident of the Northern Counties, and the owner of Plaintiff THE WESTCHESTER GUARDIAN, INC, a New York domestic corporation having offices for the conduct of business at 2 William Street, White Plains, New York. As such he is the publisher/owner of The Westchester Guardian, a weekly newspaper, which commencing in August of 2006 began publishing articles concerning *inter alia* political corruption in the government of the County of Westchester, New York.

4. Defendant JANET DiFIORE (hereinafter "DiFiore"), who is sued in her individual and personal capacities only, at all times relevant to this complaint was the elected District Attorney of Defendant COUNTY OF WESTCHESTER, New York (hereinafter "County"), a municipal corporate subdivision of the State of New York duly existing by reason of and pursuant to the laws of said State. With respect to DeFiore's conduct as set forth *infra* she acted as in her discretion as a final policymaking official of the County rather than on behalf of the People of the State of New York.

## THE FACTS

5. On March 20-21, 2007, an edition of The Westchester Guardian containing an article entitled "Chief Judge Judith Kaye is Totally Out of Touch" was distributed throughout the County of Westchester by Plaintiffs.

6. In that connection the article related amongst other matters:

"Here in Westchester, ***The Guardian*** has been exposing for several months the role of **Giulio Cavallo, Larry Schwartz**, and others, in the sale of judicial nominations, for as much as $15,000, and more. And, of course, the practice is not limited to judges. It's well known in political circles that Giulio Cavallo is furious with DA Janet DiFiore's spouse, attorney Dennis Glazer, for reneging on his promise to pay Cavallo $30,000 for the Independence Party's cross-endorsement of Janet for DA against [former candidate for the office of District Attorney] Tony Castro in 2005" (boldface and italic emphasis in original).

7. As a result of that article's publication on March 21, 2007, at 2:57 P.M. DiFiore telephoned Plaintiff and engaged in the following conversation with him:

"DA Fiore: Sam Zherka?

Sam [Zherka]: Yes.

DA: This is DA Janet DiFiore.

Sam: Hey, how are you?

DA Fiore: Not good, not fucken good.

Sam: I'm sorry to hear that.

DA: I just read something in your stupid newspaper that I'm not happy with.

Sam: Look, I don't write for the paper. I only own it. I couldn't write an

> article if my life depended on it. Let me go out and get the
> newspaper and then I will call you back to discuss it with you.
> Give me a number where I can reach you.
>
> DA: Call me on my cell.
>
> Sam: Are you sure?
>
> DA: Yes, call me on my cell, 914-224-7238.
>
> Sam: I'll call you back in fifteen, twenty minutes."

7. Immediately following that conversation and in a panic Zherka telephoned Richard Blassberg, the editor of The Guardian News and asked him to explain what he had written in reference to DiFiore. Zherka immediately thereafter retrieved a copy of The Guardian News from a sidewalk newsrack and read the article about which Defendant referenced.

8. At 3:14 P.M. on March 21, 2007, Plaintiff Zherka telephoned Defendant by means of her cell phone number at which time the following conversation took place:

> "Sam: Hello. Hi, this is Sam Zherka.
>
> DA Fiore: Yes.
>
> Sam: I just picked up the newspaper. Can you tell me what article
> and what part of the article you are talking about?
>
> DA: Judith Kay being out of touch. She read the part in the article
> and I read it too. Look, what you did is personal! You don't go
> after family. That is a no no. My husband is one of the most
> respected attorneys in the country. He knows every US Supreme
> Court Justice on a first name basis, and has their direct lines. He

4

is in front of these people all the time. He is well regarded and respected. What you did is not right.

Sam: Look, I didn't do anything! I told you I don't write for the <u>Guardian</u>. Rich Blassberg wrote that article.

DA: It's your newspaper. Don't ever mention that man's name to me. I fucken hate him. He is going to get you in a lot of trouble. If I saw him laying in the street bleeding to death I wouldn't help him. I hate that man. I fucken hate him! You should find another writer. he's going to cause a lot of problems for you. No one in this county likes him.

Sam: Look, I'm not a bullshitter, I'm a straight guy. If it's black, I say it's black. If it's white, I say it's white. I know you are very good friends with Domenic Procopio. He has told me that in the past. I'm an old fashioned guy. I don't bother anyone. And I don't take anyone's bullshit either.

DA: I'm not calling as the DA. I'm calling as a person who is angry at what was written about a member of her family. I come from a good old fashioned family too. I have kids, and I don't want my kids reading these lies about their father. I'm telling you, don't make it personal! You can write about my office, criticize the job my office is doing, but don't make it personal. I know how to play the game! How would you like it if someone came after your family?

> Sam: No, you're right. I wouldn't like that. Look I have a lot of respect for Domenic Procopio. What do you want me to do. Just tell what it is that you want me to do. I promise that we will never do another article naming you or anyone in your family unless it's positive. I'm a man of my word. If I go against my word you can spit in my face.
>
> DA: I want a retraction. I want a retraction immediately and an apology. A complete retraction.
>
> Sam: Well, I don't know if we can do that.
>
> DA: Yes you can. I want a complete retraction, that's it! You can do it.
>
> Sam: Let me speak to Rich and try to get it done. I have to figure out a way to do it. If we can't do it, would you want your version, or maybe your husband can tell us that what was said in the article was a lie. I will make sure we print it.
>
> DA: It has to be a retraction, nothing else.
>
> Sam: I will try, but you have my word we will never write another article on you or your family unless it's positive. You will never see your name tied to a negative article in my paper again. I will shut it down before that happens. After I speak to Rich I will get back to you.
>
> DA: I will not settle for anything less than a full retraction.
>
> Sam: I will try my best. Have a good day."

8. Intimidated by Defendant's threats - - "[D]on't make it personal"; "Don't make it personal"; "You don't go after family"; "How would you like it if someone came after your family?"; "I know how to play the game"; coupled with her expletive riddled expression of hatred for the <u>The Westchester Guardian</u>'s editor who Defendant repeatedly warned "is going to get you [Zherka] in a lot of trouble", "he's going to cause a lot of problems for you" - - and out of fear that Defendant would use and/or abuse her authority as District Attorney to injure him and/or his family, for the balance of 2007 and over protests by Blassberg Plaintiffs did not publish any articles that negatively reported anything regarding DiFiore personally and/or her husband.

9. As a proximate result of Defendant's conduct Zherka was been: chilled in the exercise of his First Amendment protected rights, humiliated, embarrassed, rendered anxious and upset, and otherwise rendered sick and sore.

10. Also as a proximate result of Defendant's conduct The Guardian News, Inc. was been chilled in its exercise of its First Amendment protected rights.

## AS AN FOR A CLAIM

11. Repeat and reallege as if fully set forth the allegations of fact contained in paragraphs "1' to "10", inclusive.

12. Under the premises Defendants' conduct violated Plaintiffs' rights as guaranteed by the First Amendment to the United States Constitution, 42 U.S.C. §1983.

WHEREFORE a judgment is respectfully requested:

    a. Awarding against the individually named Defendant such punitive damages as the jury may impose,

a. Awarding against both Defendants such compensatory damages as the jury may determine,

b. Declaring that Defendants' conduct violated Plaintiffs' rights as guaranteed by the First Amendment,

c. Awarding reasonable attorney's fees and costs, and

d. Granting such other and further relief as to the Court seems just and proper.

Dated: White Plains, New York
April 9, 2008

LOVETT & GOULD, LLP
Attorneys for Plaintiffs
By: _____
Jonathan Lovett (4854)
222 Bloomingdale Road
White Plains, N.Y. 10605
914-428-8401